# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-968V

| | |
|---|---|
| REGINALD REESE, *Duly Appointed Administrator of* ESTATE OF RODNEY REESE, | UNPUBLISHED |
| Petitioner, | Special Master Katherine E. Oler |
| v. | Filed: September 28, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Donald Edwards*, Law Office of Don Edwards, LLC, Atlanta, GA, for Petitioner
*Mark Hellie*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

**Oler**, Special Master:

On August 4, 2020, Reginald Reese ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program") on behalf of the estate of Rodney Reese ("Mr. Reese"). ECF No. 1. The

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

petition alleges that the pneumococcal[3] and tetanus, diphtheria, and acellular pertussis ("Tdap") vaccinations that Mr. Reese received on August 7, 2018, led to his death the following day. Pet. at 1-2.

Petitioner filed a motion for interim attorneys' fees and costs on March 20, 2023, requesting a total of $173,243.29. ECF No. 54 ("Fees App." or "Application"). Respondent filed a response to the Application on April 3, 2023, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 55 ("Fees Resp.") at 2. If I determine that an award of interim fees and costs is appropriate, Respondent "respectfully requests that the Court exercise its discretion regarding petitioner's request for an award for attorneys' fees and costs." *Id.* at 4.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$145,413.55** in interim attorneys' fees and costs.

**I.      Legal Standard**

   **A. Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

---

[3] The introductory paragraph of the petition erroneously refers to the influenza vaccine as causal. Pet. at 1. The Petitioner did not receive the influenza vaccine, but received Tdap and Pneumovax (PPSV23). Ex. 1 at 47. PPSV23 is not listed on the Vaccine Injury Table, and thus is not a covered vaccine. 42 C.F.R. § 100.3.

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health &*

3

*Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.  Discussion

### A.  Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial

4

financial hardship on petitioners and their counsel."). In this case, Petitioner's attorney has been working on this case since 2019. Fees App. at 8. Additionally, Petitioner has retained three experts at a substantial cost. *Id.* at 4. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-4. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted six expert reports; two from cardiologist Jeffrey Breall, M.D., Ph.D.; two from pathologist Steven Rostad, M.D.; and two from immunologist Omid Akbari, Ph.D. Exs. 7, 8, 9, 12, 13, 14. All three experts have opined that the vaccinations Mr. Reese received on August 7, 2018, led to his death.

Specifically, Dr. Breall theorized that Mr. Reese's death resulted from "severe sepsis of a profound systemic inflammatory response." Ex. 7 at 2. He disagreed with the medical examiner's conclusion that Mr. Reese's death was caused by probable hypertensive cardiovascular disease. *Id.* Dr. Rostad also disagreed with the medical examiner's conclusion, opining instead that Mr. Reese's death was caused by "the cerebral edema (brain swelling) and herniation caused by the witnessed seizure on the morning of August 8, 2018, secondary to the Tdap and PPSV23" vaccinations that he received. Ex. 8 at 11-12. Dr. Akbari opined that the August 7, 2018, vaccinations that Mr. Reese received aggravated the inflammasome because Mr. Reese's immune system was already dysregulated due to his HIV-positive status. Ex. 9 at 13-14. This led to a seizure, "which was the main underlying reason for his death." *Id.* at 13.

This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner retained Mr. Donald Edwards of the Law Office of Don Edwards, LLC,

5

("Edwards Law")[4] to represent him in this matter. *See generally,* Fees App. Petitioner requests a total of $38,022.89 in attorneys' fees. *Id.* at 17.

      1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[5]

Petitioner requests compensation for his attorney, Donald Edwards, at the following hourly rates: $464.00 per hour for work performed in 2019; $484.00 per hour for work performed in 2020; $509.00 per hour for work performed in 2021; $525.00 per hour for work performed in 2022; and $553.00 per hour for work performed in 2023 with the exception of the preparation of the Application, for which Petitioner requests a rate of $425.00 per hour. Fees App. at 8-17.

Mr. Edwards also requests compensation for three of his colleagues. For Ms. Ananya Roy, $464.00 per hour for work performed in 2019; $484.00 per hour for work performed in 2020; and $509.00 per hour for work performed in 2021. Mr. Edwards also requests compensation for two other colleagues identified only by their initials, "SOE" and "CH." In the petition, Mr. Edwards also listed Sonya Eboigbe and Cameron Hawkins as counsel in the case, and the Court presumes that these initials are theirs. Pet. at 3. For Ms. Eboigbe, Mr. Edwards requests hourly rates of $484.00 per hour for work performed in 2020 and $509.00 per hour for work performed in 2021.

---

[4] When Mr. Edwards filed the petition, he was a member of the firm of Edwards & Hawkins, LLC. Pet. at 3. Mr. Edwards filed notice on February 20, 2023, that he had left the firm and was practicing under the firm name of the Law Office of Don Edwards, LLC. ECF No. 53.

[5] The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf.
The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
The 2023 Fee Schedule can be accessed at: https://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2023.pdf
The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

*Id.* at 8, 10-11. For Mr. Hawkins, Mr. Edwards requests an hourly rate of $484.00 per hour for work performed in 2020. *Id.* at 10.

First, I note that the rates Mr. Edwards requests for himself are consistent with what has been awarded in previous cases. *Doyle v. Sec'y of Health & Hum. Servs.*, No. 20-1994V, 2023 WL 4174132, at *2 (Fed. Cl. Spec. Mstr. May 23, 2023); *Ferrara v. Sec'y of Health & Hum. Servs.*, No. 17-1601V, 2021 WL 1250814, at *2 (Fed. Cl. Spec. Mstr. Mar. 5, 2021). Accordingly, no adjustment is warranted.

Mr. Hawkins's hourly rate for 2020 has not yet been established. He was reimbursed at an hourly rate of $350.00 per hour for work performed in 2018 and 2019. *Sanders v. Sec'y of Health & Hum. Servs.*, No. 18-452V, 2021 WL 687898, at *3 (Fed. Cl. Spec. Mstr. Jan. 26, 2021). In *Sanders*, the special master stated that this was commensurate with Mr. Hawkins's ten years of experience at that time. *Id.* However, I note that the Georgia Bar Directory indicates that Mr. Hawkins was admitted to practice in November 2012.[6] This means that, in 2020, Mr. Hawkins had eight years of experience. The forum rate for an attorney with this experience in 2020 was $309.00 to $394.00 per hour.[7] Accordingly, I will award Mr. Hawkins $360.00 per hour for the work he performed in 2020. This results in a reduction of $62.00.

Mr. Edwards has previously requested compensation for work performed by Ms. Roy and Ms. Eboigbe. *Doyle*, 2023 WL 4174132, at *2 (requesting compensation for work performed by Ms. Roy in 2020 and 2021 and by Ms. Eboigbe in 2020). In *Doyle*, the special master found that, while Ms. Roy and Ms. Eboigbe had been admitted to practice in 2021 and 2018, respectively, neither were admitted to practice in the Court of Federal Claims. *Id.* Accordingly, their rates must be reduced to that of a non-attorney. *See Underwood v. Sec'y of Health & Hum. Servs.*, No. 00-357V, 2013 WL 3157525 (Fed Cl. Spec. Mstr. May 31, 2013) (declining to award attorneys' fees because under Vaccine Rule 14(a)(1), an attorney who was not admitted to the bar of the Court of Federal Claims was ineligible to practice in the Vaccine Program). Because they have still not been admitted to practice in the Court of Federal Claims, I will reduce the hourly rates for Ms. Roy and Ms. Eboigbe to $156.00 per hour for work performed in 2019, $163.00 per hour for work performed in 2020, and $172.00 per hour for work performed in 2021. This results in a total reduction of $3,902.90.

    2. <u>Hours Reasonably Expended</u>

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed.

---

[6] STATE BAR OF GEORGIA, MEMBER DIRECTORY SEARCH: MR. CAMERON DION HAWKINS, https://www.gabar.org/MemberSearchDetail.cfm?ID=MjUwNTA0 (last visited Sept. 18, 2023).

[7] U.S. CT. OF FED. CLAIMS, OSM ATTORNEYS' FORUM HOURLY RATE FEE SCHEDULES, https://www.uscfc.uscourts.gov/node/2914 (last visited Sept. 18, 2023).

Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

On review of Mr. Edwards's invoices, I find that the number of hours expended was reasonable and thus no further reduction is warranted.

As a result, I award Petitioner a total of **$34,057.99** in attorneys' fees.

**D. Reasonable Costs**

Petitioner requests a total of $135,220.40 in costs: $134,312.24 for expert fees; $412.81 for medical record requests; $400.00 for the Court's filing fee; $53.40 for shipping costs; and $41.95 for photocopying costs. Petitioner did not provide documentation of the medical record requests, the Court's filing fee, the shipping costs, or the photocopying costs. However, as these are costs typically associated with litigation and the total is reasonable, these will be paid in full.

1. Petitioner's Expert Costs for Jeffrey Breall, M.D., Ph.D.

Dr. Breall submitted two expert reports in this case. Exs. 7, 12. He requests compensation at an hourly rate of $500.00 for 9.5 hours of work totaling $4,750.00. Fees App. at 50. Dr. Breall received his Ph.D. in physiology at the University of California San Francisco in 1983. Fees App. at 51. He received his medical degree at Albert Einstein College of Medicine in the Bronx in 1987. *Id.* He completed his residency in internal medicine in 1990 and a research and clinical fellowship in cardiology in 1993. *Id.* Since 2000, he has held the position of professor of clinical medicine in cardiology at Indiana University School of Medicine. *Id.* at 52.

A search of prior cases reveals that this is Dr. Breall's first time submitting an expert report in the Vaccine Program. I have previously found $500.00 to be a reasonable hourly rate for an expert with limited experience in the Program. *A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2023 WL 5666163, at *5 (Fed. Cl. Spec. Mstr. July 28, 2023) (awarding Dr. Gropman $500.00 per hour for work in her second case in the Vaccine Program). I find that Dr. Breall's professional qualifications justify an hourly rate of $500.00.

Petitioner did not submit itemized invoices for Dr. Breall. Dr. Breall produced two expert reports totaling two paragraphs of analysis. Exs. 7, 12. Taking into account Dr. Breall's review of Petitioner's medical records and the length of his two reports, I find the total number of hours expended in this matter is reasonable; accordingly, he will be compensated in full.

2. Petitioner's Expert Costs for Steven Rostad, M.D.

Petitioner also requests expert costs for Dr. Steven Rostad. Dr. Rostad submitted two expert reports in this case. Exs. 8, 13. He requests an hourly rate of $450.00 per hour for work performed in 2021, $475.00 per hour for work performed in 2022, and $500.00 per hour for work performed in 2023. Fees App. at 74, 76. Fees App. at 74-83. He requests a total award of $80,832.24, which includes a $3,000.00 retainer fee, 166.75 hours of work, 1.75 hours of travel at a rate of $100.00 per hour, and $94.74 in costs (two medical articles and one shipping charge). *Id.*

Dr. Rostad received his medical degree at the University of Washington in 1983. Fees App. at 84. He completed his residency in anatomic pathology in 1988. *Id.* He is board certified in pathology and anatomic pathology. *Id.* at 85. Until 2017, Dr. Rostad served as staff pathologist and director of anatomic pathology at CellNetix Pathology, LLC, and as attending pathologist/neuropathologist at Swedish Medical Center in Seattle. *Id.* at 84. Dr. Rostad was a clinical associate professor of pathology at the University of Washington School of Medicine from 1990 to 2015. *Id.*

Dr. Rostad is relatively new to the Vaccine Program and his rates for 2022 and 2023 have not yet been set. His requested rate for 2021 is consistent with previous decisions. *Porter v. Sec'y of Health & Hum. Servs.*, No. 18-132V, 2022 WL 17849931, at *2 (Fed. Cl. Spec. Mstr. Dec. 22, 2022). I find that his rate increases for 2022 and 2023 are reasonable.

I note that the documentation Petitioner provided does not include the $3,000.00 retainer fee for which Petitioner requests reimbursement. Fees App. at 18. Per the Guidelines for Practice Under the National Vaccine Injury Compensation Program, before reimbursement of costs will be made, sufficient supporting documentation, such as receipts, invoices, and billing statements, must be provided.[8] Accordingly, a reduction of $3,000.00 is appropriate. Petitioner may request compensation for this retainer when he files a final fee request.

Petitioner submitted itemized invoices for Dr. Rostad's work. Fees App. at 74-83. Review of these invoices shows that the amount of time spent on various tasks was unreasonably high. In

---

[8] The Guidelines for Practice are available at www.uscfc.uscourts.gov/sites/default/files/Guidelines-4.24.2020.pdf.

9

fact, the number of hours billed by Dr. Rostad (166.75) is among the highest I have seen. For example, Dr. Rostad spent a total of approximately 93 hours writing and editing his two expert reports (62 hours writing the reports and 31 hours editing the same). *See id.* I acknowledge that Dr. Rostad's two reports total 85 pages (78 pages when his CV is not included), but based on my experience in adjudicating fee and cost awards, I find that 93 hours is excessive for this work. Dr. Rostad also spent 13.5 hours reviewing medical records, but the record shows that only 178 pages of records have been filed. ECF Nos. 8, 9, 11, 20. In my experience reviewing similar cases, 13.5 hours is likewise an excessive amount of time to review this small quantity of medical records. For example, in the *Morrison* case (18-386V), Dr. Steinman, a neurologist, spent 15.5 hours reviewing more than 3,500 pages of medical records and spent approximately 8.5 hours drafting a 28 page expert report. In *Marcum* (20-65), Dr. Steinman spent 10 hours reviewing more than 10,000 pages of medical records and 18 hours drafting and editing a 38 page report. Dr. Rostad also billed approximately 14.75 hours for various tasks like communicating via email with counsel. In my experience, this, like the other billing entries discussed above, is excessive.

Accordingly, I find that a 15% reduction in Dr. Rostad's requested expert fees is appropriate. I will deduct 15% of his total requested amount, less the $3,000.00 retainer fee as discussed above. This comes to a total reduction for excessive billing of $11,674.84.

3. Petitioner's Expert Costs for Omid Akbari, Ph.D.

Petitioner also requests expert costs for Dr. Omid Akbari. Dr. Akbari submitted two expert reports in this case. Exs. 9, 14. He requests an hourly rate of $550.00 per hour for work performed in 2021 and 2022. Fees App. at 28, 30. Dr. Akbari billed a total of 86.8 hours of work and requests a total of $47,740.00. *Id.*

Dr. Akbari received his Ph.D. in cellular and molecular immunology at the National Institute for Medical Research in London in 1998. Fees App. at 32. He also earned a master's degree in medical and general microbiology at University College London in 1995. *Id.* He completed a postdoctoral fellowship at Stanford University in 2001. *Id.* He currently holds the position of professor of immunology in the department of molecular biology immunology and the department of medicine at the University of Southern California. *Id.* at 33.

First, I find that Dr. Akbari's requested hourly rate of $550.00 is excessive. A review of recent cases shows that Dr. Akbari has consistently been awarded $500.00 per hour for his work in the Vaccine Program. *Sara v. Sec'y of Health & Hum. Servs.*, No. 20-1143V, 2023 WL 3966449, at *5 (Fed. Cl. Spec. Mstr. June 12, 2023) (reducing Dr. Akbari's requested hourly rate of $550.00 to $500.00); *Romero v. Sec'y of Health & Hum. Servs.*, No. 18-1625V, 2023 WL 2598014, at *5-6 (Fed. Cl. Spec. Mstr. Mar. 22, 2023) (same); *Wolf v. Sec'y of Health & Hum. Servs.*, No. 17-308V, 2022 WL 10075190, at *3 (Fed. Cl. Spec. Mstr. Sept. 28, 2022) (same). Accordingly, I will reduce his hourly rate to $500.00. Over his 86.8 hours of work, this results in a total reduction of $4,340.00.

Second, I find that the number of hours Dr. Akbari billed in this case is unreasonably high. A review of Dr. Akbari's invoices shows that he billed roughly 48.5 hours, more than half the total, studying medical literature. Fees. App. at 28-31.

10

Dr. Akbari filed a total of 55 medical articles, however seven of those were duplicates (they were filed as attachments to both of his expert reports). Of the remaining 48 medical articles, 29 of those have been filed in other cases on my docket in which Dr. Akbari has appeared as an expert for the petitioner (to include the cases of *Walters*, *Reinhardt*, and *Valdez*). In fact, some of the articles were filed in two or three cases. That leaves 19 articles filed by Dr. Akbari that are seemingly new to this case. It should not take Dr. Akbari the same amount of time to review articles with which he is familiar as it takes him to review articles that are new. Based on my experience in assessing the propriety of fee decisions, 48.5 hours to review 19 articles is excessive.[9]

I have reduced Dr. Akbari's compensation in the past for excessive billing in the preparation of expert reports. *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (deducting 20% of Dr. Akbari's billed hours because his invoices contained administrative tasks and vague entries, and because the overall number of hours was excessive); *Walters v. Sec'y of Health & Hum Servs.*, No. 15-1380V, 2021 WL 3928993, at *7-8 (Fed. Cl. Spec. Mstr. June 16, 2021) (deducting 20% of Dr. Akbari's billed hours for excessive time spent reviewing medical literature); *Reinhardt v. Sec'y of Health & Hum. Servs.*, No 17-1257V, 2021 WL 2373818, at *5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (deducting 20% of Dr. Akbari's billed hours spent reviewing medical literature); *see also Sara*, 2023 WL 23966449, at *5 (making no reduction but noting that the number of hours billed was large given Dr. Akbari's output).

Based on my experience in reviewing similarly situated cases, I find that a 20% reduction of Dr. Akbari's hours spent reviewing medical literature is appropriate. This amounts to a reduction of 9.7 hours at $500.00 per hour, which is $4,850.00.

I award Petitioner a total of **$111,355.56** in attorneys' costs.

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

- A lump sum in the amount of **$145,413.55**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and the Law Office of Don Edwards, LLC.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[10]

---

[9] I additionally note that the 2.7 hours Dr. Akbari spent studying "the role of Pneumovax 23 in induction of adverse effects and neuropathy in normal subjects and in patients with HIV" (Fees App. at 29) is likely not compensable, as PPSV23 is not a covered vaccine.

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master